**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JOSE GUADALUPE VALDES
MARQUEZ,

       Plaintiff,

v.                                                        Case No: 8:14-cv-2407-T-30TBM

AYLIEM ORIHUELA CASTILLO,

       Defendant.

_____

## ORDER

THIS CAUSE comes before the Court upon the Amended Petition for the Return of a Minor Child to Mexico and Issuance of Show Cause Order. Upon review and consideration, it is the Court's conclusion that the Amended Petition should be granted.

### Background

Petitioner commenced this action alleging that his wife, Respondent, Ayliem Orihuela Castillo, wrongfully removed their minor child, J.V.O., age three, from their residence in Mexico. Petitioner seeks immediate return of the minor child to Mexico under the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601-11610 ("ICARA"). Petitioner sought provisional relief during the pendency of the ICARA Petition, including a Warrant of Arrest directing the United States Marshals Service to serve the Petition and any orders of this Court related to the Petition on Respondent, and to take into custody Respondent and J.V.O.'s travel documents to be delivered to the Court pending the

resolution of these proceedings. Petitioner further sought an order prohibiting removal of the child from the Tampa division of this district.

The Court granted Petitioner's requests, and issued an Order directing Respondent to appear at a hearing with her and J.V.O.'s travel documents.   The Order also provided contact information for local legal aid offices and encouraged Respondent to retain counsel to assist her in defending against the Petition. The Court held a hearing on November 12, 2014, at which Respondent appeared *pro se*. Respondent delivered her and J.V.O.'s passports to the Court. The Court instructed her to remain within its jurisdiction with J.V.O. until further notice. The Court scheduled a final evidentiary hearing for November 20, 2014, and again advised Respondent that she should retain counsel to assist her with her defense. At the hearing, Respondent appeared without counsel. The Court continued the hearing until December 3, 2014.

The Court conducted the final evidentiary hearing on December 3, 2014. Petitioner appeared by videoconference and was represented by *pro bono* counsel. Respondent appeared personally and was represented by *pro bono* counsel.   Petitioner and Respondent both testified through a court certified interpreter. The Respondent submitted two exhibits into evidence: a copy of her passport and a copy of J.V.O.'s passport.

### *Undisputed Facts*

Petitioner and Respondent married in Cuba on or about April 6, 2012. Respondent and J.V.O. moved to Mexico to live with Petitioner on or about December 5, 2012. Respondent requested that Petitioner file the appropriate papers for her to bring her other two children to live in Mexico. Petitioner, Respondent, and J.V.O. lived together in

Petitioner's family home until October 2013. J.V.O. spent ten months in Mexico living with Petitioner and Respondent prior to arriving in the United States.

On or about October 4, 2013, Respondent left Mexico with J.V.O. without warning to or knowledge of Petitioner.   Several days later, the parties began communicating by e-mail. However, the communication stopped and Petitioner has not seen J.V.O. since Respondent removed him from Mexico.

Petitioner is J.V.O.'s natural father. Petitioner was born in Mexico, has lived in Mexico for his entire life, and is a Mexican citizen. Respondent is J.V.O.'s natural mother. Respondent was born in Cuba and is a Cuban citizen. Respondent lived in Cuba until she moved to Mexico. Her current address is in Tampa, Florida. Respondent has immediate and extended family in Cuba, including her parents and two minor children.

### *Discussion*

**I.    Legal Standard**

The Hague Convention on the Civil Aspects of International Child Abduction, T.I.A.S. No. 11,670,[1] (the "Convention") to which Mexico and the United States are signatories, was adopted in 1980 "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence."   The rationale underlying the Convention is that a child's country of habitual residence is the place where decisions relating to custody and access are best decided.   *Bocquet v. Ouzid*, 225 F. Supp. 2d 1337,

---

[1]The Convention was reprinted in 51 Fed. Reg. 10,494 (Mar. 26, 1986).

1340 (S.D. Fla. 2002).

The United States implemented the Convention through ICARA which entitles a person whose child has been wrongfully removed to, or wrongfully retained in, the United States to petition a federal court to order the child returned. 42 U.S.C. § 11603(b).   Courts considering an ICARA petition have jurisdiction to decide the merits only of the wrongful removal or retention claim, not of any underlying custody dispute.   *Lops v. Lops,* 140 F.3d 927, 936 (11th Cir. 1998); *see also Friedrich v. Friedrich,* 78 F.3d 1060, 1063 (6th Cir. 1996).

In order to establish a prima facie case of wrongful removal or retention under the Convention and ICARA, a petitioner must show by a preponderance of the evidence that "(1) the habitual residence of the child immediately before the date of the alleged wrongful removal was in the foreign country; (2) the removal breached the petitioner's custody rights under the foreign country's law; and (3) the petitioner was exercising custody rights at the time of the removal."   *Bocquet*, 225 F. Supp. 2d at 1339.

The Convention establishes that the law of the country in which a child was habitually resident governs decisions as to whether custody rights existed at the time of removal, and it permits judicial notice to be taken of that country's law. *Id*. at 1345 (citing Convention, Art. 14).   Once petitioner meets that burden, ICARA requires a child who has been wrongfully removed or retained to be "promptly returned unless one of the narrow exceptions set forth in the Convention applies." *See Lops*, 140 F.3d at 936 (citing 42 U.S.C. § 11601(a)(4)).

The general rule that a wrongfully removed or retained child must be returned is subject to six exceptions, also referred to as "affirmative defenses," each of which may excuse the return of the child. Convention Art. 12, 13, 20. The exception at issue in this case is grave risk of harm to the child. A court need not order the return of a child if the respondent demonstrates by clear and convincing evidence that there is a grave risk that the child's return would "expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Convention Art. 13(b); 42 U.S.C. § 11603(e)(2)(A). *See also In re S.L.C.,* 4 F. Supp. 3d 1338, 1350 (M.D. Fla. 2014). Even if an exception is established, the Court has discretion to order the return of a child if return would further the aims of the Hague Convention. *In re S.L.C.,* 4 F. Supp. 3d at 1350.

### a.  Habitual Residence

The Petitioner first must show that J.V.O. was habitually resident in Mexico at the time of his removal. The Eleventh Circuit has established a two-step process for determining habitual residence. *Seaman v. Peterson*, 762 F. Supp. 2d 1363, 1377 (M.D. Ga. 2011) *aff'd*, 766 F.3d 1252 (11th Cir. 2014). First, the Court must determine "[w]hether there [was] a settled intention to abandon a prior habitual residence ...." *Ruiz v. Tenorio*, 392 F.3d 1247, 1252–53 (11th Cir. 2004) (per curiam). "It is not necessary to have this settled intention at the time of departure, as it could develop during the course of a stay originally intended to be temporary." *Id*. at 1252. Courts recognize that where the situation involves a very young child, the shared intent of the parents in determining the residence of their child is of primary concern. *See id*. at 1253.

The Court is satisfied that Respondent had a settled purpose to abandon Cuba as her and the child's primary residence and to reside permanently in Mexico with Petitioner and the minor child. Respondent presented evidence that she maintains a home in her name in Cuba; the minor child resided in Cuba for over a year prior to arriving in Mexico; and she has two minor children in Cuba. However, the Respondent did agree that she began the process to have her other minor children move to Mexico, that she intended to live with Petitioner in Mexico as a family with J.V.O., and that the Petitioner began construction of additional space in his home to accommodate her other minor children.   She also insisted that she wanted to find work while in Mexico.

Having determined that the Respondent intended to abandon her previous habitual residence in Cuba, the Court next must determine if there was "an actual change in geography and the passage of a sufficient length of time for the child to have become acclimatized." *Id.* at 1253. J.V.O. lived in Mexico for approximately ten months with Petitioner, Respondent and Petitioner's extended family. Respondent was his primary caretaker. The child was not registered in school and he traveled to Cuba on a few occasions with Respondent to visit family. Nonetheless, Respondent does not dispute that it was her overall intention to live with Petitioner in Mexico as a family, in spite of her trips to Cuba.

The Court finds that J.V.O.'s country of habitual residence, prior to his removal to the United States, is Mexico. Mexico is the last country where the parties intended to reside together with the child. Further, when Respondent traveled from Cuba to Mexico, she intended to bring her other children to Mexico to live with her and Petitioner. Respondent also came to Mexico intending to obtain work.

### b.  Petitioner's Custody Rights

Since the Court has determined that Mexico was J.V.O.'s habitual residence, Mexican law will determine whether Petitioner had custody rights at the time of removal. The statute implementing ICARA defines the term "rights of custody" as "rights of care and custody of a child, including the right to determine the place of residence of a child, under the laws of the country in which the child is a habitual resident—(A) attributed to an individual or legal custodian; and (B) arising—(i) by operation of law, or; (ii) through a judicial or administrative decision;  or  (iii) through a legally enforceable arrangement between the parties."   22 U.S.C. § 9101, Convention, Art. 3.

"The Convention defines 'rights of custody' to 'include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence.' " *Abbott v. Abbott*, 130 S.Ct. 1983, 1989 (2010) (quoting Convention, Art. 5). *See also Hanley*, 485 F.3d at 645 (citing Convention, Art. 5; *Furnes v. Reeves,* 362 F.3d 702, 711 (11th Cir. 2004) *abrogated on other grounds by Lozano v. Montoya Alvarez*, 134 S. Ct. 1224 (2014)). "[A] parent need not have 'custody' of the child to be entitled to return of his child under the Convention; rather, he need only have one right of custody." *Furnes,* 362 F.3d 714. "Further, he need not have a sole or even primary right of custody." *Id*. at 714–15. A parent who has authority under the law of the state of habitual residence to make decisions regarding the personal care, protection, maintenance, and finances of the child, possesses rights of custody that fall "within the ambit of decisions relating to 'the care of the person of the child' within the meaning of Article 5 of the Convention." *Hanley*, 485 F.3d at 647 (quoting *Furnes*, 362 F.3d at 713–14 & 714 n. 11).

In *Seaman*, the court examined the petitioner's right of custody under the laws of the Civil Code for the State of Jalisco, Mexico. 762 F. Supp. 2d at 1378. The court noted that "[in] Mexico generally, and in Jalisco particularly, the doctrine of *patria potestas* (parental authority/responsibility) governs the relationship between parents and their children." *Id.* " 'Parental authority/responsibility (*patria potestas*) can be understood as the series of reciprocal rights and obligations that exist between the father and the mother.... Its purpose is the custody of the minors themselves as well as their assets and it is intended to protect them.' " *Id.* (quoting the Civil Code for the State of Jalisco, Mexico).  Further, "*[p]atria [p]otestas* 'is exerted by both parents,'[] and lasts until it ceases …, is terminated …, or is suspended … ." *Id.*

The court examined whether the rights conferred on the petitioner by the doctrine of *patria potestas* are rights of custody and noted that the Eleventh Circuit had not yet addressed this specific issue, but the First Circuit did in *Whallon v. Lynn*, 230 F.3d 450, 455 (1st Cir. 2000). In discussing the doctrine of *patria potestas* in general, and as applied by the Baja California Sur Civil Code in particular, the First Circuit concluded that rights conferred on a parent by *patria potestas* are rights of custody rather than mere rights of access. *Whallon*, 230 F.3d at 458. The *Seaman* court therefore concluded that *patria potestas* conferred custody rights to the petitioner and that those rights had not ceased, nor had they been terminated or suspended. Thus, the *Seaman* court concluded that the respondent violated the petitioner's rights of custody.

In this case, J.V.O. is Petitioner's biological child. Petitioner and Respondent were married and lived together in Toluca, Mexico at the time of removal. There is no indication

that there was any divorce or custody proceeding pending prior to J.V.O.'s removal. Accordingly, there is no judicial determination or agreement regarding custody to guide the court. Therefore, Petitioner has to establish that he has custody "by operation of law." Petitioner provided a copy of the Civil Code of the State of Mexico[1] (the "Civil Code").

The Civil Code states the following regarding parental authority/responsibility (*patria potestas*): it is exerted over non-emancipated minor children; it includes the legal representation of the minor, the wholesome protection of the minor in a physical, moral and psychological sense, his or her care and custody, the administration of his or her assets and the right to discipline. Arts. 4.202, 4.203. Further, "[p]arental authority/responsibility (*patria potestas*) over the children will be entered in the following order: By the mother and father….," Art. 4.204; and "[i]n case of separation of those exerting parental authority/responsibility (*patria potestas*) and as long as there is no agreement on the custody of the minor children, the judge will rule on the matter, always considering the best interest of the minor." Art. 4.205. The Civil Code provides that the parental authority/responsibility ceases under the following circumstances: death of the person who exerts it; emancipation of the minor; marriage of the minor; simple adoption, judicial order or when the child reaches the age in which he or she is no longer legally a minor.

---

[1] Article 14 of the Convention allows a court, "[i]n ascertaining whether there has been a wrongful removal ... within the meaning of Article 3, ... [to] take notice directly of the law of ... the State of the habitual residence of the child, without recourse to the specific procedures for proof of that law ... which would otherwise be applicable." Additionally, under ICARA, "no authentication of ... [documents or information included with a petition under the Convention] shall be required in order for the ... document[ ] or information ... to be admissible in court." 42 U.S.C. § 11605. *See also Seaman*, 762 F. Supp. 2d at 1379, n. 16.

Petitioner has established that he had a custody right to J.V.O. by operation of law under the doctrine of *patria potestas*. *See Seaman*, 762 F. Supp. 2d at 1379. *See also Lopez v. Alcala*, 547 F. Supp. 2d 1255, 1258 (M.D. Fla. 2008) (divorced parents who shared physical custody prior to removal established prima facie case for wrongful removal from Mexico.); *Ramirez v. Buyauskas*, No. CIV.A. 11-6411, 2012 WL 606746, at *12 (E.D. Pa. Feb. 24, 2012) *amended*, No. CIV.A. 11-6411, 2012 WL 699458 (E.D. Pa. Mar. 2, 2012) (noting that "[c]ustody law in Mexico is based on the concept of '*patria potestas'* " and concluding that petitioner had custody rights since he was the biological father and none of the three exceptions - cessation, termination or suspension - applied to him). The Respondent presented no evidence that Petitioner's custody rights ceased.

The Court finds that Petitioner had custody rights to J.V.O. at the time of removal and that the Respondent's removal of J.V.O. from Mexico to the United States was in violation of Petitioner's custody rights under Mexican law.

### c. Petitioner's Exercise of Custody Rights at Time of Removal

The Court must further determine whether the petitioner exercised his custody rights. Courts "liberally find exercise whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child." *Seaman,* 762 F. Supp. 2d at 1379. "Under this approach, 'a person [who] has valid custody rights to a child under the law of the country of the child's habitual residence ... cannot fail to 'exercise' those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child.' " *Id*. (quoting *Friedrich,* 78 F.3d at 1066). "Further, '[o]nce it determines the parent exercised custody rights in any manner, the court

should stop—completely avoiding the question whether the parent exercised the custody rights well or badly.' " *Id.* (quoting *Friedrich*, 78 F.3d at 1066). The Court finds that Petitioner was exercising his custody rights at the time of the removal. Consequently, Respondent's removal was "wrongful."

### d. Respondent's Affirmative Defense

Respondent asserts that there is a grave risk of physical or psychological harm to J.V.O. if he is returned to Mexico. She asserts that she fears for her life if she returns to Mexico, that the Petitioner's residence is in a dangerous neighborhood with active drug activity, one of his nephews is a drug addict who consumes drugs outside of the home, and that Petitioner is very controlling and would not allow her to leave the home without an escort.

This defense requires the alleged physical or psychological harm to be "a great deal more than minimal." *See Whallon*, 230 F.3d at 459 (quoting *Walsh v. Walsh*, 221 F.3d 204, 218 (1st Cir. 2000)). Only severe potential harm to the child will support this defense. *See Nunez-Escudero v. Tice-Menley,* 58 F.3d 374, 377 (8th Cir. 1995). The harm must be greater than what is normally expected when taking a child away from one parent and passing the child to another parent. *Whallon*, 230 F.3d at 459.

The Court finds that the Respondent has not met her burden by clear and convincing evidence that a grave risk of harm to J.V.O. exists. Respondent's claims are too vague and generalized to support this affirmative defense.

*Conclusion*

The Court concludes that Petitioner has established that J.V.O.'s habitual residence prior to removal was in Mexico, and that he has custody rights to J.V.O. which he was exercising at the time of the removal. Therefore, Respondent's removal of J.V.O. from Mexico without Petitioner's knowledge or consent was wrongful as defined by the Convention and ICARA. Respondent has not met her burden to prove by clear and convincing evidence that there is a grave risk of psychological or physical harm to the child. Therefore, Petitioner is entitled to a return of J.V.O. forthwith.

It is therefore **ORDERED AND ADJUDGED** that:

1.   The minor child, J.V.O. shall be returned to Mexico.

2.   The minor child, J.V.O. shall be accompanied by an officer from the Mexican Consulate during his return to Mexico.

3.   Petitioner's counsel shall notify the Court once J.V.O.'s return is complete.

4.   The Respondent, Ayliem Orihuela Castillo, may accompany J.V.O. and the consular officers to Mexico, if she chooses, at her own expense.

5.   The Clerk of Court shall retain Respondent's and J.V.O.'s travel documents until further order from this Court.

6.   The Clerk of Court is directed to close this case and terminate any pending motions as moot.

7.      The Court reserves jurisdiction to determine costs, fees, and expenses pursuant to 42 U.S.C. § 11607.

**DONE** and **ORDERED** in Tampa, Florida, this 5th day of December, 2014.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2014\14-cv-2407 order.docx